I don't think I say very much. The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit, hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument this morning is Crescent Plaza Hotel against Zurich Insurance, number 211316. And we can begin with Mr. Burns. Thank you, and may it please the Court. The insurance policy at issue in this case differs from the ordinary all-risk insurance policy and the insurance policies in the hurricane of cases that both parties have submitted to this Court. This policy contains an interpretive guidepost that goes straight to the question of what is direct physical loss or damage. If we look at the beginning of the policy at appendix page 444, there is one insuring agreement in this policy, and that insuring agreement makes clear that this policy covers just all risks of direct physical loss or damage. This is an interpretive bonanza because we know that when coverage or coverages are later delineated in the policy, those coverages must be based on risk of direct physical loss or damage. So when we go to time element coverages, that's the business interruption coverage, and specifically time element coverage, EE, called cancellation of bookings, we find that cancellations of bookings are covered if they result from things such as communicable disease, public closure orders. Could I ask you though, Mr. Burns, this is a question that probably relates to most of our in what sense, let's put damage to one side and let's focus on direct physical loss. In what sense was the Ritz Carlton barred somehow from walking into its banquet rooms, from using it, from finding some use that was compatible with the local closure orders? I just don't see how it was truly lost. I mean, nobody stole it, it didn't run away, nobody built a fence around it, nobody denied the ability to go into it. It's just that the uses became much less remunerative. So how is that a direct physical loss? Judge Wood, on the Illinois Courts Command, which is a look at the ordinary meaning of language, we see that one definition of loss that's used quite commonly is to be deprived of something. And the Crescent, the Dallas Ritz Carlton, was deprived of its functional space. So if we imagine Dean Fairing's world-famous restaurant having 10,000 square feet of usable space at the beginning of the pandemic, suddenly with the pandemic and the closure orders, it has 5,000 square feet of space because it can only use part of it. It has to spread people apart and limit the number of customers that come in. So folks have been deprived. Well, could I ask you, I mean, one of the concerns about that approach is that it would seem that this insurance would cover anything, anytime maybe a fire marshal concluded that a smaller number of people should be in a particular space for fire things. It seems strange to call that a loss unless virtually every diminishment of use resulting from regulation also counts as a loss. Well, this isn't just regulation telling us how we should use our property in a particular way, say, serve food, not drinks. It is a regulation that actually limits space. But we're talking about the words as used in all these policies, but what Illinois law actually commands is how are the words used in this policy? And the parties were clear in this policy that communicable disease and public closure orders, even food poisoning, was a risk of direct physical loss or damage. That's the only way this policy can reasonably be read. So all of the other policies aside, and I'm not saying that the breadth of this coverage shouldn't inform your decision with respect to these policies, but Illinois law commands that we read this policy from front to back, and if you read it from front to back, you come away with one conclusion. Much of the coverage like cancellation of bookings would be vitiated under a reading of the policy that didn't include loss of use and the type of microscopic injury that we allege in the- Right. No, I understand that. I'm wondering, really, you're making a loss of use argument. There's nothing wrong with the property. The loss that you had is the extent to which under the orders in Texas and in Dallas in particular, you couldn't use your property in the same way. You still owned it. You could still sell it. You could, for all I know, put a pop-up COVID testing clinic into it, and you could have used it in different ways. But of course, the way it was intended to be used, the plan had been for banquets, for conventions, for fine dining. So I'm having trouble turning this into a complete deprivation of use, and if it's not a complete deprivation physically, then why does the policy cover it? So this policy, Judge Wood, doesn't require a complete deprivation. If we look at supplemental appendix at page 70, A1, B1, it says there's coverage if the policyholder is wholly or partially prevented from carrying on its operations. And I want to talk a bit about loss of use in general because it's an important point. Loss of use is a type of physical loss or damage, and in the early case law, loss of function, loss of use was always viewed as a type of direct physical loss or damage. So let me be clear about the differences between loss of business income and loss of use, and I think I can show that with an example. Two weeks before I started, before the pandemic started, I opened this law firm, my own law firm, and I signed a three-year lease. I was prevented from using my space for a year because of the pandemic, but my business income didn't suffer because insurance cases went gangbusters. So if I made a claim for business interruption, it would be denied because I suffered no loss of business income, even though my direct physical loss or damage is that loss of use and loss of function. But I will say this, we haven't only alleged loss of use or function, we've alleged that the particles COVID-19 attached to property surfaces and to the ambient air in property and changed those property microscopically, making it unsafe for use. Can I ask you a couple of questions about the cancellation of bookings coverage from the briefs? I got the impression that the insurer had agreed to pay that. Were you all subject to the policy cap? Is that right? So it is right, but my point, Judge Hamilton, is interpreting it. We'll get to that in just a moment, if you would. But is there a dispute between these parties now about payment for the cancellation of bookings coverage? There is not, I understand. The payment has been made? We didn't allege one way or the other. I'll ask Mr. Babin about it then, if you don't know. But it does seem to be a topic that is appropriate, given that it's in the briefing. Do I understand your argument, the interpretive argument you're making correctly, to be that cancellation of bookings coverage applies only for direct physical loss or damage? Hence, if it's covered at all, and this is the cause, it must have been because this is treated under the policy as a form of direct physical loss or damage. Is that right? Exactly, Judge Hamilton. Can you also address the microorganism exclusion here? And let me tell you what concerns me. If I read the definition, if the same definition were given in the form of coverage, we will cover loss from microorganisms with that definition. And if the insurer took the position, well, that applies to bacteria and spores and mold, but not to viruses. I'd probably be inclined to award punitive damages to the insurance company for trying to draw that line. I'm really struggling with this notion that viruses are not treated as a form of microorganism under that broad definition. And Judge Hamilton, I think it would be perfectly appropriate if it were a coverage grant for you to treat it like this. But remember, with respect to exclusions, under Illinois law, the insurer bears a double burden. It has to show we have no set of facts that fit within the interpretation. And in fact, if you look at the term microorganism, particularly in that list of other terms, but just in a dictionary, a virus, under many dictionaries, and we think the better rule, is not a microorganism. It's not an organism. It's not living. It doesn't have organs or it's a reasonable interpretation. And they have to exclude any reasons or have to exclude any reasonable interpretation. If you wish to save some rebuttal time, it's up to you, but you're winding down. I'll save the remainder of my time for rebuttal. Thank you very much. Certainly. Mr. Babin. Good morning, and may it please the court. Jeffrey Babin, Wigan and Dana Preserve, American Insurance Company. I want to address a few things that came up during Mr. Burns' argument. I do want to refer to the cancellation of bookings coverage, which is in the policy. It is somewhat surprising that Mr. Burns emphasized that not only today, but also in the reply brief. Because yes, it does provide coverage for cancellation of bookings from things like contagious disease, food poisoning, civil riot, and the like. And as was stated, Zurich, and Mr. Burns concedes, Zurich did not deny coverage. So that is entirely distinct from the kinds of coverage that are issued in this appeal, where in each instance, there has to be physical loss or damage to property. And let's be clear that the Dallas Ritz Carlton suffered no such loss, whether to its real property, its personal property, or even guest property. Mr. Babin, let me ask you this question. This is what bothers me about your position. If the city of Dallas had for some reason, let's assume a decent regulatory reason, had gone and constructed a large fence around the Dallas Ritz Carlton and had told the owners, you may not have any access to this. That would be for the duration of the time the fence was in place, a direct physical loss of that property. It hasn't vanished from the surface of the earth, but you're not allowed to go into it. So there are a couple of things about your definition of loss here that are worth discussing. One is, I don't see why loss has to be permanent. I can imagine a temporary loss that would be a compensable kind of loss. And secondly, in my hypothetical, it's a physical fence, but if regulatory enactments say that you can't go in, then hopefully we're at a time where we comply with the law and we don't actually have to put bulldozers or fences around something. So why wasn't the net effect of these orders something to impose a functional loss of the property on Crescent? Your Honor, I think we have to make a distinction between two things. One is the allegation in this complaint, which is that the hotel was unable to use its interior spaces in the manner in which it had previously used those spaces. It could use the interior spaces, but not in the same manner with the same profitability perhaps as they're used to. So your first answer then is that there actually was no metaphorical fence. They could go in and use it, say for the COVID clinic that I was talking about or something like that. Or they could have decided that that space to spread customers out, they would have an extra lobby to check people in so that the lobby, which was open at all times, people wouldn't be able to congregate. These were public health measures only. So that space, people could always, employees could clean it, they could paint, they could sit and talk to each other, they could walk through all the way to the kitchen, which had takeout and in-room dining. There was never a time where the space was uninhabitable or condemned. And let's be clear the government orders in this instance. The government orders were not issued because of anything specific to the Dallas-Fritz Cartland or physical loss or damage. They were judgment calls that certain spaces were just simply going to spread people out. And so it's no different than say the grocery stores or the hospital, even with COVID patients, or even the outdoors where people couldn't always congregate. There's no physical loss or damage in those spaces, just as there's no physical loss or damage here. Mr. Burns has talked about in his briefs, plexiglass, for example, or the legacy sports case that we talked about in our 28J letter where they built a patio. Those are improvements for public health. And there's always been viruses in the air, cold glass, you know, a sneeze card at a salad bar or soap dispensers in the bathrooms. These are not indicative of physical loss or damage. There is civil authority coverage here, which is if there's a restriction on access, but only if there's physical loss or damage within a certain specified number of miles. So there's no physical loss or damage that they can rely on here. So this property was not condemned or fenced off. It's really no different than the example that was given about the fire marshal, but maybe if I can give even a more physical example, if, for example, there's rowdiness in the hotel bar and there's a local ordinance saying all bars are going to close two hours earlier than they would have otherwise, sure, there's a restriction in the particular use of that space. There's nothing wrong with that space. And that government order or the people, the rowdy customers who may have actually caused physical harm to other customers resulting in that restriction did not cause physical loss or damage to that space under any definition of physical loss or damage. Let me ask one other thing here. I keep focused on damage to the building. That is what I look at. This may be confined to that. It's damage to the building, not to other types of losses or some kind of diminishing in income and one thing or another. Now, I thought that was your position, that we're talking about and confined to damage to the building. Is that wrong? Well, physical loss or physical damage, your honor. And physical loss is a classic example. Damage what? What damage is there? You're saying there's no damage to the building, therefore there's no coverage. Correct. Is that correct? Or loss of the personal property either. So a classic example for the hotel chain is death of property or you can have a windstorm that damage is as the Windridge case. This court itself two years ago, this court stated that under Illinois law, physical refers to an alteration of the physical dimensions of the property, color, structure, some kind of alteration. And that came from an Illinois Supreme Court decision, travelers insurance versus culture. That decision was focusing on damage and I guess what I'm trying to do at least, perhaps following up a bit on what Judge Mannion is saying, is certainly there could be physical damage in the way the Illinois Supreme Court described it in the Alger case, but there also could be physical loss. As you say, maybe the tables blow away or the roof collapses and something is what we might colloquially say, totaled. There's no way it can be repaired. There's no way. So you say it's lost instead, but it's also possible that you could lose real property by having your right to occupy that property taken away. Your Honor, first of all, the elder travelers elder case, which was a liability. Right. So liability policy, but it uses the word physical and it made a distinction between when the policy didn't say physical, when it said simply economic harm or intangible harm was covered. And then there was a later policy period where the word physical was included. And they said that clearly makes a difference, that word. And it refers to something more structural or you know, more permanent and not an economic or intangible loss. So, and of course our policy itself, Zurich couldn't have made it more clear to the policyholders by actually having a list of things that aren't included in physical loss or damage. Many policies don't, it's not necessary. We understand what the plain language of physical loss or damage means, but it said loss of use is covered. So it was very clear. Mr. Babin, if I asked you to go back and answer directly Judge Wood's earlier hypothetical about the fence, would that be a loss of physical loss of use covered by this policy? If there is a restriction in the policy, if there is a restriction to access because of physical loss or damage, then it's covered. Otherwise it is not. There could be a situation. I'll give it a go. Mr. Babin. Yes, sir. I'm going to try again. Would you please answer the question that both Judge Wood and I have now asked rather than change the question? Certainly not. Take her hypothetical with the fence imposed by city officials. Would that be a direct physical loss covered by your policy? I could see a situation where that would be a direct physical loss because then you have a complete dispossession. I'll take that as a yes. And so why is it different? I understand you're saying that there was not a complete denial of access here. I understand that point. We've got a bunch of cases today. So suppose instead of the physical fence, there's a ring of police officers around it. Probably no difference. And then so then go with just the order that says everybody stay out. Would that also be a direct physical loss of use? Your Honor, I can see a situation where because of complete dispossession of the property that it can no longer be used as a structure and it's uninhabitable in that sense, then yes. And I would analogize that it's certainly far afield from this case, but I would analogize that to the cases where they talk about asbestos or gasoline fumes where not even a single person can go in. You have to put out the yellow tape and you have to rip out the walls and you have to, and it's no longer inhabitable as a structure. And so if there's some other government, if there is some condition that requires us to be fenced off because and become uninhabitable absent some kind of repair or remediation, then I can see that. And it's a good hypothetical, but it's certainly not even close to this. Let's vary the hypothetical, please, sir. Let's vary the hypothetical a little bit more. And suppose everybody needs to stay out except the owners or managers can go into the property to make sure, for example, that freezers and refrigerators are working and to preserve inventory and make sure the air conditioning and the heating is on and so on. A few exceptions, but you can no longer use it as a hotel. Would that also be a direct physical loss of use? No, Your Honor, because there the property is habitable. It serves as a building and the employees can go in, they can use it, they can fill takeout orders, they can check the mail. Again, it's simply a loss of use. That the building itself doesn't require any remediation. And let me give the example here. The orders at issue, the only reason why the banquet hall, for example, may have not been used for in-person dining is not because of any lack of repair or remediation. If they put in plexiglass, they still couldn't open that banquet hall, not because of any physical loss or damage, but because of a public health restriction. So if you have a public health restriction in a clothing store and the owner can go in and still, you know, receive packages and use the building, then we have a loss of use. The building itself can reopen without any repair or remediation. Thank you for the explanation. Could you address, you didn't get a chance to respond yet to the reply for these points about the microorganism exclusion in this case. I was wondering if you could address that. This court can issue an alternative holding, a co-equal holding, that under the microorganisms exclusion or no physical loss or damage. And there's no ambiguity. It doesn't matter whether it's affirmative coverage here or an exclusion. There's still no ambiguity in this language that excludes microorganisms of any type, nature, or description, including but not limited to any substance whose presence possesses an actual or potential threat to human health. Now, Mr. Burns has conceded that a bacteria would be covered even though it's not listed. It doesn't, to make it broad, you don't have to list every example. And virus, virology, microorganisms, the dictionary text, the medical text, all refer to microorganisms. There's the idea that a plain reading of this language requires one to get into whether it has living cellular structure or not is, in fact, the counterpoint to a plain ordinary reading of this. Now, it does- I'm going to interrupt you here because we're running out of time. And I'm still focused on damage to the building. And that seems to be what is ensured. If there's some damage to the building, the structure, and there isn't any. And I thought that was your position. Maybe getting in all this other hypotheticals aren't what we're talking about. We're talking about the situation as it is. And that is, was there damage to the building? And they said no. We agree on it. We don't think it's at all a closed case for this purpose. And so this court can affirm either on- I can't understand you. Yes. This court can affirm that there's no judgment below and no physical loss or damage or on the microorganism exclusion, which is certainly equally applicable. I see my time is up. If there are no further questions, I ask that the court affirm the judgment below. All right. I see no further questions. So thank you very much. Anything further, Mr. Burns? Yes, Judge Wood. I'd like to follow up on Judge Manion's questions, some of Judge Hamilton's questions based on your hypothetical and also make an overarching point here. First, with respect to Judge Manion's question on damage, Judge, even under their definition of damage, which they think of as structural damage, we allege that in the complaint at a microscopic level. And that's the quintessential jury issue, whether there's been damage or not at that microscopic level. Second, with respect to Judge Hamilton's questions regarding Judge Wood's hypothetical where he tried to get at the level of loss of use for there to be a limitation on coverage, I just want to point out to the court once again that there is a provision in the policy that allows coverage, if we're wholly or partially, partially prevented from carrying on the operations. And then I just want to make an overarching point about these cases because it isn't lost on us that there have been a large number of federal cases in particular, but many state court cases, the results are better in state court, but there have been a large number of federal courts that have gone against this. And I want to speak to that briefly, and I want to say this. The plain meaning role in the entire policy role are intended to be consumer protection roles because the insurers, the drafter, those roles want to make sure the cases, with all due respect, we believe treat these roles more like gatekeeping roles where any skepticism about an interpretation results in the policyholder losing the case without any opportunity to develop the case. And I see my time is up, so thank you very much for your time. Thanks to both councils. The court will take this case under advisement.